# EXHIBIT A

State of Illinois        )
                         ) ss
County of St. Clair      )

## UNSWORN DECLARATION UNDER PENALTY OF PERJURY
## IN SUPPORT OF COMPLAINT FOR FORFEITURE

I, Kyle Waddington, declare under penalty of perjury the following:

At all relevant times, I have been a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA). The contents of this Declaration are based on information provided to me during the course of my investigation from participants in the criminal activity, from other witnesses, and from other law enforcement officers.

1. On March 24, 2021, TFO Travis Hoguet (TFO Hoguet) and declarant conducted a traffic stop on a gray 2020 Jeep Cherokee, bearing an Illinois registration, for improper lane usage and following too closely. The traffic stop occurred on Interstate 70 Westbound at mile marker 25, in Madison County, Illinois. The registration of the vehicle returned to EAN Holdings LLC, out of Lombard, Illinois. As the TFOs initiated the traffic stop, the TFOs noticed that the driver of the vehicle was occupied with something on the passenger side of the vehicle.

2. Declarant approached the passenger side of the vehicle and made contact with the driver. Declarant informed the driver the reason for the traffic stop and requested his driver's license. The driver, Mohammed S. FARHAT, produced an Illinois identification card and handed it to declarant. TFO Hoguet approached the vehicle behind declarant and retrieved FARHAT's Illinois identification card and returned to the patrol vehicle. Declarant remained at the passenger side window of the vehicle and spoke with FARHAT.

3. FARHAT stated that he was traveling to Missouri to see a friend to learn English. FARHAT stated he had a concealed carry license and a gun by his side. Declarant asked

FARHAT what he does for a living and FARHAT stated he is a tow truck driver. Declarant asked FARHAT for the vehicle rental agreement for the vehicle he was driving, however, FARHAT was not able to locate the agreement. During the conversation, declarant noticed that FARHAT was breathing heavily and was visibly shaking.

4. While declarant spoke with FARHAT, TFO Hoguet queried FARHAT's information in law enforcement data bases. TFO Hoguet did not observe any criminal history for FARHAT.

5. After speaking with FARHAT, declarant returned to the patrol vehicle. TFO Hoguet advised declarant that FARHAT had no visible criminal record through law enforcement databases. Declarant informed TFO Hoguet that FARHAT had a concealed carry license and had a firearm in the driver side door. Declarant could visibly see FARHAT take a deep breath and take several drinks of water while he was running information on his in-car computer. Declarant stated that he could smell a strong odor of air freshener coming from FARHAT's vehicle. TFO Hoguet stated that he also could smell the strong odor of air freshener emitting from the vehicle while he was standing near the rear of the vehicle.

6. The TFOs noted that FARHAT lives in Justice, Illinois (Cook County) but was traveling West on I-70. The TFOs googled directions from Justice, Illinois to St. Louis, Missouri and noted that the most direct route would be via I-55.

7. Based on the TFOs training and experience, the TFOs believed that FARHAT's direction of travel, his reason for travel, the strong odor or air freshener emitting from the vehicle, as well as visible non-verbal behaviors such as visible shaking/deep breaths were indicative of FARHAT's possible involvement in criminal behavior.

8. Declarant again approached FARHAT's vehicle, issued him a verbal warning and

handed FARHAT's identification back to him. Declarant advised FARHAT that he was free to go. Declarant then asked FARHAT if he could ask a couple of questions. Declarant asked FARHAT where he was coming from and FARHAT stated he was coming from his house. Declarant asked if FARHAT had any medical conditions and FARHAT said no. Declarant stated to FARHAT that both TFOs on scene could visibly see his carotid artery. TFO Hoguet advised declarant at the same time that he could see FARHAT's carotid artery visibly bouncing. Declarant asked if there was anything illegal in the vehicle and FARHAT stated no. Declarant asked if there was any marihuana, cocaine, methamphetamine, heroin, or large amounts of United States currency in the vehicle. FARHAT said no to everything mentioned by declarant. After declarant asked FARHAT about heroin/methamphetamine, FARHAT stated that he was Arabic/Muslim and never uses drugs. Declarant asked FARHAT for consent to search the vehicle and all of its contents and Farhat stated "no." Declarant then informed FARHAT that TFO Hoguet was going to run his K-9 around the vehicle. FARHAT stated "okay," as he nodded his head up and down.

9. Declarant asked FARHAT to exit the vehicle for officer safety (due to the firearm near the driver's side door). FARHAT stated that he was "safe here." TFO Hoguet, before retrieving K-9 Barna from his patrol vehicle, approached FARHAT's vehicle and advised FARHAT to roll the windows up, turn off the vehicle, and put his hands on the steering wheel. While TFO Hoguet stated this to FARHAT, declarant informed TFO Hoguet that FARHAT's carotid artery was bouncing and to have FARHAT exit the vehicle for safety reasons. TFO Hoguet went to the driver's side of the vehicle and asked FARHAT to step out. FARHAT made furtive movements, reaching around in the vehicle. Declarant, while standing at the passenger's side window, asked FARHAT multiple times to exit the vehicle, but FARHAT would not

comply. TFO Hoguet, for officer safety, reached inside FARHAT's vehicle and unlocked the door. TFO Hoguet opened FARHAT's driver side door and retrieved the firearm from the driver side door panel. TFO Hoguet unloaded the firearm, which had a live round of ammunition in the chamber, and secured it in the front passenger side seat of the patrol vehicle. Declarant moved around to the driver's side and again asked FARHAT to exit the vehicle. At this time, FARHAT complied and stepped out of the vehicle. Declarant advised FARHAT that TFOs removed the firearm for officer safety while TFO Hoguet ran his K-9 around his vehicle and FARHAT stated, "okay."

10. TFO Hoguet retrieved K-9 Barna from the patrol vehicle and conducted an open-air sniff of FARHAT's vehicle while FARHAT stood in front of the patrol vehicle with declarant. While FARHAT stood in front of the patrol vehicle, he spoke casually with declarant. FARHAT advised that he had a dog back in his country. FARHAT advised he had a bulldog. TFO Hoguet deployed K-9 Barna around FARHAT's vehicle and yielded a positive K-9 alert/indication. TFO Hoguet explained to FARHAT that K-9 Barna yielded a positive alert/indication for narcotics on the vehicle and asked if there was any reason as to why K-9 Barna would indicate. FARHAT advised he does not do any drugs.

11. Declarant searched the vehicle and located a large sum of United States currency in the center console of the vehicle. The currency was located in a plastic bag and was rubber banded in individual bundles which is indicative with suspected drug proceeds. TFOs secured FARHAT in handcuffs.

12. Declarant, as witnessed by TFO Hoguet, read FARHAT his Miranda Rights and FARHAT acknowledged that he understood his rights. FARHAT advised that he wanted a lawyer and no other questions were asked.

13. Before departing the location of the traffic stop, TFO Hoguet secured FARHAT in the front passenger side seat of his patrol vehicle. Declarant secured the United States currency on the front dashboard in front of FARHAT due to not having a self-sealing evidence bag available. Declarant took possession of FARHAT's rental vehicle for transport to the Fairview Heights DEA Resident Office (FHRO). The TFOs left the scene of the traffic stop and relocated to the FHRO.

14. Upon arrival at the FHRO, the TFOs escorted FARHAT into a secure booking area and secured him inside. Declarant, TFO Hoguet, TFO Jake Degener (TFO Degener) and Special Agent Ryan Bandy (SA Bandy) assisted with the case at the FHRO and conducted a more detailed search of the vehicle. Nothing further pertinent to the case was located in the vehicle.

15. While processing the case at the FHRO, TFO Degener obtained FARHAT's fingerprints and completed a DNA kit. TFO Degener and SA Bandy attempted to conduct an audio/video interview with FAHART inside an interview room at the FHRO, however, FARHAT stated that he did not want to talk. After SA Bandy and TFO Degener completed the interview process with FARHAT, FARHAT was escorted back into the booking area where he was given back his personal belongings and released from custody.

16. On the same date, TFO Hoguet and K-9 Barna conducted an open-air sniff of the seized currency. Declarant recorded a video of the K-9 sniff performed by TFO Hoguet and K-9 Barna. TFO Hoguet informed declarant that K-9 Barna gave a positive alert for the odor of narcotics on the currency.

17. Declarant was able to retrieve a copy of FARHAT's rental agreement and noted that FARHAT picked the vehicle up at 12:20 p.m. on March 9, 2021 and returned the vehicle at

2:03 p.m. on March 26, 2021. Declarant noted that during the 18 days that FARHAT rented the vehicle, he drove it a total of 4,673 miles.

18. On March 25, 2021, the seized currency was transported to Loomis for an official count. The total was determined to be $24,000.00.

19. Based on the foregoing, declarant believes that the $24,000.00 in United States Currency is property which constitutes money furnished or intended to be furnished by a person in exchange for a controlled substance, or proceeds traceable to such an exchange, or money used to facilitate a violation of 21 U.S.C. § 801 *et seq*.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 30th day of August, 2021.

KYLE WADDINGTON
Task Force Officer
Drug Enforcement Administration