**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 3:21-CV-1073-NJR** |
| **$24,000.00 IN UNITED STATES CURRENCY,** | |
| **Defendant.** | |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Dismiss the United States of America's Verified Complaint for Forfeiture filed by Claimant Mohammed Farhat. (Doc. 14). The Government seized $24,000 in U.S. Currency from Farhat pursuant to 21 U.S.C. § 881(a)(6) because the money allegedly constitutes proceeds of, or was used to facilitate, a violation of the Controlled Substances Act. (Doc. 1). Farhat asserts the Complaint fails to state a claim for relief that is plausible on its face and, thus, it must be dismissed under Federal Rule of Civil Procedure 12(b)(6). The Government filed a response in opposition. (Doc. 15). For the reasons set forth below, the motion is denied.

### BACKGROUND

On March 24, 2021, Mohammed Farhat was driving westbound on Interstate 70 in Madison County, Illinois, when he was pulled over for improper lane usage and following too closely by Travis Hoguet and Kyle Waddington, Task Force Officers (TFOs) with the Drug Enforcement Administration. (Doc. 1-1 at ¶ 1). TFO Waddington informed

Farhat of the reason for the traffic stop and requested Farhat's license, as well as the rental agreement for the rental car he was driving. (*Id.* at ¶ 2). Farhat produced his Illinois identification card but could not locate the rental agreement. (*Id.* at ¶¶ 2-3). Farhat told TFO Waddington that he was headed to Missouri to see a friend and learn English. (*Id.* at ¶ 3). He also stated that he had a concealed carry license and a gun by his side. (*Id.*). TFO Waddington noticed that Farhat was breathing heavily and shaking. (*Id.*). During this exchange, TFO Hoguet searched Farhat's information in law enforcement databases and found no criminal history. (*Id.* at ¶ 4).

TFO Waddington returned to the patrol car and noticed Farhat take a deep breath and several drinks of water. (*Id.* at ¶ 5). Both officers agreed they smelled a strong odor of air freshener coming from Farhat's vehicle. (*Id.*). The TFOs also noted that although Farhat lived near Chicago in Justice, Illinois, he was traveling on Interstate 70 instead of Interstate 55, which would have been a more direct route. (*Id.* at ¶ 6). Based on their training and experience, the officers believed these factors were indicative of Farhat's "possible involvement" in criminal behavior. (*Id.* at ¶ 7).

TFO Waddington approached Farhat's vehicle, gave him a verbal warning, and returned his identification. (*Id.* at ¶ 8). TFO Waddington also told Farhat he was free to go. (*Id.*). TFO Waddington then proceeded to ask Farhat if he could ask a couple of questions. (*Id.*). TFO Waddington asked Farhat where he was coming from and if he had anything illegal in the vehicle, including marijuana, cocaine, methamphetamine, heroin, or large amounts of cash. (*Id.*). Farhat said he was coming from his house and that he never uses drugs. (*Id.*). Both TFOs advised Farhat they could see his carotid artery visibly

bouncing. (*Id.*). TFO Waddington then asked for consent to search the vehicle, and Farhat declined. (*Id.*). TFO Waddington then informed Farhat that TFO Hoguet was going to "run his K-9 around the vehicle," to which Farhat stated, "okay." (*Id.*).

TFO Waddington asked Farhat to exit the vehicle for officer safety, but Farhat initially refused because he was "safe here." (*Id.* at ¶ 9). TFO Hoguet then reached inside the vehicle and unlocked the door before retrieving the firearm from the driver-side door panel. (*Id.*). TFO Hoguet unloaded the firearm and secured it in his patrol vehicle. (*Id.*). TFO Waddington again asked Farhat to exit the vehicle, and Farhat complied. (*Id.*).

TFO Hoguet retrieved K-9 Bama from his patrol vehicle and conducted an open-air sniff of Farhat's vehicle. (*Id.* at ¶ 10). K-9 Bama gave a positive alert for narcotics on the vehicle. (*Id.*). TFO Waddington then searched the vehicle and located a large sum of U.S. Currency in the center console. (*Id.* at ¶ 11). The cash was in a plastic bag and rubber banded in individual bundles. (*Id.*). The TFOs arrested Farhat and advised him of his *Miranda* rights. (*Id.*). Farhat stated that he wanted a lawyer. (*Id.*).

TFO Hoguet transported Farhat to the DEA office, while TFO Waddington drove the rental vehicle. (*Id.* at ¶ 13). A more detailed search of the vehicle was performed at the DEA office, but nothing further was found. (*Id.* at ¶ 13). Another Task Force Officer took Farhat's fingerprints and completed a DNA kit, while two other Task Force Officers attempted to interview Farhat. (*Id.* at ¶ 15). Farhat again stated he did not want to talk. (*Id.*). He was then given his personal belongings, minus the $24,000, and released from custody without charge. (*Id.*).

That same day, TFO Hoguet and K-9 Bama conducted an open-air sniff of the

seized currency, and Bama gave a positive alert for the odor of narcotics on the currency. (*Id.* at ¶ 16). The sniff was videotaped. (*Id.*). Later, TFO Waddington obtained a copy of the rental agreement for the vehicle Farhat was driving, which showed the vehicle was picked up at 12:20 p.m. on March 9, 2021, and returned at 2:03 p.m. on March 26, 2021. (*Id.* at ¶17). During that period of time, the car was driven 4,673 miles. (*Id.*).

LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). Generally, a complaint need only state a "plausible claim for relief" and provide fair notice to the defendant. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Civil forfeiture complaints, however, are subject to a heightened pleading standard under the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. *United States v. $42,600.00 United States Currency*, 409 F. Supp. 3d 671, 673 (S.D. Ind. 2019) (citing *United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 641 (7th Cir. 2015)).

Under the Supplemental Rules, the Government first must plead the circumstances giving rise to the action "with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." FED. R. CIV. P. SUPP. R. E(2)(a). Supplemental Rule G(2) then provides that a complaint must: (a) be verified; (b) state the grounds for subject-matter jurisdiction, *in rem* jurisdiction over the defendant

property, and venue; (c) describe the property with reasonable particularity; (d) if the property is tangible, state its location when any seizure occurred; (e) identify the statute under which the forfeiture action is brought; and (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial. FED. R. CIV. P. SUPP. R. G(2)(a)-(f). The Government must carry its burden by a preponderance of the evidence. 18 U.S.C. § 983(c)(1). While the claimant may move to dismiss a forfeiture action under Federal Rule of Civil Procedure 12(b), "the complaint may not be dismissed on the ground that the government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." FED. R. CIV. P. SUPP. R. G(8)(b)(ii); 18 U.S.C. § 983(a)(3)(D); *United States v. 286,161 bottles, et al.*, No. 19 C 3876, 2020 WL 550598, at *2 (N.D. Ill. Feb. 3, 2020).

DISCUSSION

Farhat argues neither the Government's Verified Complaint for Forfeiture nor its attached affidavit states sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its preponderance of the evidence burden at trial. Farhat argues the facts alleged by the Government do not rise to the level of probable cause to justify the search and seizure. He further contends the Government has failed to establish a substantial connection between the seized property and any criminal offense.

In response, the Government argues it has satisfied its pleading standard by alleging that K-9 Bama alerted for the odor of narcotics on the outside of the car, officers found a large sum of currency in rubber-banded bundles in the vehicle, K-9 Bama gave a positive for the odor of narcotics on the currency, Farhat gave an implausible travel story,

the officers smelled a strong scent of air freshener, and Farhat seemed extremely nervous. The Government asserts the alert of a "properly trained" K-9 should be given probative weight, which provided probable cause for the seizure.

Under 21 U.S.C. § 881(a)(6), all money furnished or intended to be furnished by a person in exchange for a controlled substance, and all proceeds traceable to such an exchange, are subject to forfeiture to the United States. Civil forfeiture is a proceeding *in rem*, where the property itself is treated as being guilty of the wrongdoing. *United States v. Funds in the Amount of One Hundred Thousand & One Hundred Twenty Dollars ($100,120.00)*, 901 F.3d 758, 768 (7th Cir. 2018). The property owner's culpability is not considered in determining whether the property should be forfeited. *United States v. $128,915.00*, No. 20-CV-00667-JPG, 2021 WL 2432064, at *2 (S.D. Ill. June 15, 2021). Thus, even when there is no criminal prosecution, the Government can seize cash that it believes is traceable to drug trafficking. *See* 21 U.S.C. § 881(a)(6); 18 U.S.C. § 983(a)(3)(B).

The Government bears the burden of establishing, by a preponderance of the evidence, that the property is subject to forfeiture. *United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 454 (7th Cir. 2005) (citing 18 U.S.C. § 983(c)(1)). The preponderance of the evidence standard requires a greater showing than "probable cause." *United States v. 5 S. 351 Tuthill Rd., Naperville, Ill.*, 233 F.3d 1017, 1023 (7th Cir. 2000). To meet its burden, the Government must demonstrate a "substantial connection" between the property seized and a criminal offense. *See* 18 U.S.C. § 983(c)(3). It may rely on evidence gathered both before and after the filing of the forfeiture complaint to do so. *Id.* § 983(c)(2).

When considering a motion to dismiss, however, the court need only decide whether the complaint alleges facts sufficient to support a reasonable belief there was a substantial connection between the currency and a criminal offense. *United States v. $42,600.00 United States Currency*, 409 F. Supp. 3d 671, 676 (S.D. Ind. 2019). The court looks to the totality of the evidence in making this determination. *United States v. Funds in the Amt. of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 455 (7th Cir. 2005).

Here, the Verified Complaint for Forfeiture alleges facts sufficient to support a reasonable belief that the $24,000 found in Farhat's vehicle was—or was intended to be—furnished by a person in exchange for a controlled substance or proceeds traceable to such an exchange. Accepting the alleged facts as true, Farhat was pulled over on Interstate 70, which was an illogical route given his starting point and his destination. He was carrying a firearm, he was breathing heavily and shaking, his carotid artery was visibly pounding, and there was a strong odor of air freshener coming from the vehicle. K-9 Bama alerted to the odor of narcotics outside the vehicle, and the officers found a large sum of money in rubber bands in the center console. K-9 Bama later alerted again to the odor of narcotics on the currency itself. As for the vehicle Farhat was driving, it was a rental car on which he accumulated thousands of miles over a span of a few weeks. The Court finds that the Government has alleged facts that, if true, support a reasonable inference that the currency has a substantial connection to a criminal offense—drug trafficking. *See $42,600.00 United States Currency*, 409 F. Supp. 3d at 676 (denying motion to dismiss where, among other things, certified narcotics detection canine gave a positive alert for the odor of a controlled substance on the currency); *United States v. Cole*, 21 F.4th

421, 434 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 1420 (2022) (totality of circumstances including extreme nervousness, dubious travel plans, a newly registered and insured vehicle, and inconsistent statements supported officer's belief that defendant was engaged in criminal activity).

Finally, the Court agrees with the Government that, to the extent Farhat is arguing his right to be free of unreasonable searches and seizures was violated, a motion to dismiss is not the proper procedural vehicle to do so. Instead, he may raise that issue in a motion to suppress evidence of the seized currency. *See* FED. R. CIV. P. SUPP. R. G(8)(a).

For these reasons, the Motion to Dismiss the United States of America's Verified Complaint for Forfeiture filed by Claimant Mohammed Farhat (Doc. 14) is **DENIED**.

**IT IS SO ORDERED.**

DATED:   **May 26, 2022**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**